L. T. WEBB, *et al.,* v. ROBERT SCOTT

176 So. 442.
Opinion Filed December 22, 1936.
On Rehearing February 12, 1937.
On Further Rehearing October 28, 1937.

*H. D. Wentworth* and *Tom Walden,* for Appellants;
*Mabry, Reaves, Carlton & White,* for Appellee.

PER CURIAM.—L. T. Webb and Stella E. Webb, his wife, brought their bill of complaint against Robert Scott praying that he be enjoined from instituting suit to foreclose paving certificate No. 717 issued by the Board of County Commissioners of Hillsborough County, or from transferring it, pending determination of its validity; that it be cancelled as a cloud on complainants' title to Lot 18, Block 9, Nearbay Subdivision; that defendant and all those claiming under him since the institution of this suit be enjoined from claiming any right, title or interest in said paving certificate and that the record thereof be stricken from the Improvement Lien Book of the County Commissioners.

The bill of complaint alleged in substance that complainants own Lots 18, Block 9, Nearbay Subdivision in fee simple absolute, subject only to a mortgage, executed February 1, 1932, to Andrew M. Ross in the sum of $6,000.00; that on May 6, 1927, the Board of County Commissioners of Hillsborough County, under the pretended authority of Chapter 10145, Acts of 1925, issued paving certificate No. 717, purporting to be a lien against said lot in the principal sum of $1042.37, and an entry thereof was made in the records of the Board of County Commissioners; that said certificate is held by defendant Robert Scott; that he is asserting lien rights thereunder which constitute a cloud upon complainants' title to said land; that said certificate and pretended assessment are invalid, and said assessment is a cloud upon complainants' title; that said lot extends 138 feet along Mississippi Avenue and 50 feet along Moody Avenue; that Moody Avenue was, prior to the paving of Mississippi Avenue, paved and improved and said lot assessed for $376.92 therefor and certificate No. 6121 issued against said lot, which was thereafter foreclosed; that the Board of County Commissioners, in making the assessment of $1042.37 for improvements on Mississippi Ave-

nue, assessed said lot according to front footage without regard to benefits received; that said lot was not benefited by the improvements for which said assessment was made; that a paved street, Moody Avenue, already ran in front of said lot and that said assessment of $1042.37 and paving certificate No. 717 are illegal, null and void.

The defendant, Robert Scott, filed an answer and an amended answer, each of which is very prolix, asserting as the principal defense to the bill of complaint that complainants are estopped to assert the invalidity of the assessment and of the paving certificate.

The Chancellor entered an order restraining Robert Scott from instituting suit on paving certificate No. 717, or from transferring it, pending determination of its validity.

Robert Scott, after first obtaining permission of the court, filed his cross bill seeking to foreclose paving certificate No. 717, praying that an administrator *ad litem* of the estate of A. M. Ross, deceased, be appointed to defend the cross bill; that an accounting be had to determine the amount owed by virtue of the assessment and certificate of indebtedness; that cross defendants be ordered to pay the amount found to be due to cross complainant, or that the premises be sold to satisfy the indebtedness; and that the right of cross defendants to redeem be foreclosed.

The cross bill alleged in substance that a petition signed by two-thirds of the owners of the abutting land had requested that Mississippi Avenue be graded, paved and curbed, between Howard Avenue and the Atlantic Coast Line Railway; and that the Board of County Commissioners, acting upon said petition, improved said street, and delivered paving certificate No. 717 with others to the contractors in payment for their work; and that thereafter, Robert Scott purchased said certificate and is now the owner and holder thereof, and prays for foreclosure of said cer-

tificate which includes the principal and interest thereon and for attorney's fee and costs, including abstract information.

Motion to strike the cross bill as amended was denied by the Chancellor, after which cross defendants filed their answer to the cross bill.

The evidence taken before a Special Master showed and the Chancellor so found the following facts; Mississippi Avenue was for more than twenty years prior to October 16, 1925, a public road in Hillsborough County, and was located outside the corporate limits of any municipality. On August 8, 1924, Margaret E. Creelman, owner of said lot, signed a petition which was presented to the Board of County Commissioners requesting that Moody Avenue from Texas Avenue to Southview Avenue, upon which said lot abuts, be graded, curbed and paved, and the cost proportionately assessed against abutting property, which was done pursuant to the provisions of Chapter 9316, Acts of 1923. On October 16, 1925, a petition purportedly signed by the owners of two-thirds of the property abutting Mississippi Avenue between Howard Avenue and the Atlantic Coast Line Railway, was presented to the Board of County Commissioners, asking that that portion of Mississippi Avenue be graded, paved and curbed, the petition stating that petitioners understood that the cost would be paid by owners of the abutting property. At that time, Edna H. Holliday was the owner of said lot and signed the petition. Hillsborough County had at that time and has had ever since a population of more than 125,000 according to the State Census of 1925. The Board of County Commissioners determined the sufficiency of the petition, ordered the improvement made and assessed the cost against the abutting property on a front-foot basis. On November 25, 1925, Edna H. Holliday conveyed said lot to L. H. Hook

who thereby assumed payment of the paving assessment against said lot. L. H. Hook went into possession, had actual knowledge of the improvements, made no objection to them, was satisfied with them and remained the owner of said lot until the paving certificate on the Moody Avenue side of the lot was foreclosed by Harry Raymond, and purchased at the foreclosure sale, on August 2, 1928, by John R. Walsh & Company. On December 19, 1928, L. H. Hook required ownership of the lot by purchase thereof from John R. Walsh & Company. It was stipulated by counsel that on November 17, 1926, L. H. Hook and wife mortgaged the property to A. M. Ross, which mortgage was renewed on December 18, 1928. The mortgage was foreclosed and a Master's Deed to said lot issued to A. M. Ross on December 2, 1929. Ross owned the lot until February 1, 1932, without questioning the validity of the improvement, assessment, paving certificate or benefit. On February 1, 1932, A. M. Ross and wife conveyed the lot to L. T. Webb and Stella Webb, his wife, warranting that the lot was free from all incumbrances except taxes for the year 1932, and deposited in escrow, $1700.00 with the First Savings & Trust Company of Tampa, to pay paving certificate No. 717 if not cancelled of record on or before three years after date of agreement, which agreement was dated February 6, 1932.

The Chancellor found in favor of defendant and cross-complainant, Robert Scott, dismissed the bill of complaint and allowed foreclosure of paving certificate No. 717.

From the final decree, L. T. Webb and Stella Webb, his wife, and Tom Walden as Administrator *Ad Litem* of the Estate of A. M. Ross, deceased, took this appeal.

It is contended, in the first question presented; that Chapter 10145, Acts of 1925, is unconstitutional (a) because it fails to provide for assessment of abutting property accord-

ing to benefits received instead of according to frontage (b) because it undertakes to delegate to petitioning property owners legislative power and fails to provide for notice and hearing prior to granting the petition and incurring the costs and (c) because it is a special law applicable only to Hillsborough County, and undertakes to prescribe certain duties, regulate the jurisdiction and powers of the County Commissioners in violation of Article III, Section 20, Florida Constitution.

Chapter 10145, Acts of 1925, provides for assessment of abutting property, by the Board of County Commissioners, for grading, paving and curbing improvements made on the basis of front footage, after a petition has been duly signed by the owners of two-thirds of the abutting property and the petition granted by the Board of County Commissioners. This failed to provide for notice and hearing and was held unconstitutional. Chapter 12208, Acts of 1927, undertook to validate all acts and proceedings of the Board of County Commissioners in respect to assessments and certificates of indebtedness. This Court in the case of Smith Brothers v. Williams, 100 Fla. 642, 126 So. 367, 100 Fla. 660, 131 So. 335, was equally divided as to whether Chapter 12208 validated the acts done under Chapter 10145. On the rehearing of that case three of the six Justices were of the opinion that Chapter 12208 was a legislative assessment for improvements already made; and the Circuit Court of Appeals for the Fifth Circuit, in the case of U. S. Fidelity & Guaranty Co. v. Highway Engineering & Construction Co., 51 Fed (2d) 894, unanimously adopted that view, having before them a different statute but one of similar effect. That view should now become the rule in this State.

As to the contention that Chapter 10145 fails to provide for notice and hearing, we held in Dover Drainage Dis-

trict v. Pancoast, *supra,* that the Legislature could, in enacting a statute, determine therein that the abutting property was benefited to a certain extent and assess the abutting property in that amount for the special improvement already made. Although Chapter 12208 is regarded as a legislative assessment, it only attempts to validate the acts and proceedings of the Board of County Commissioners taken under Chapter 10145, and does not attempt to cure or validate acts and proceedings of the Board of County Commissioners which are unconstitutional.

It is contended that Chapter 10145 is a special Act attempting to regulate the powers and duties of the County Commissioners in violation of Article III, Section 20, of the Constitution, Chapter 10145 is a special Act applying only to Hillsborough County. Whitney v. Hillsborough County, 99 Fla. 628, 127 So. 486. But the Act does not attempt to regulate the powers and duties of the County Commissioners. These powers and duties are provided for by general law. This statute provides for a method of making local improvements outside the limits of municipalities and provides for a method of assessing abutting property for those improvements, which method utilizes the County Commissioners as the agency to effect the purpose of the Act, the duties to be performed by the County Commissioners therein described being provided for by general law. This Act does not violate Article III, Section 20 of the Constitution because Article IX, Section 5 of the Constitution, authorizes the Legislature, by special Act, to assess and impose taxes for county purposes. Whitney v. Hillsborough County, 99 Fla. 628, 127 So. 486.

The second question presented is whether this assessment, made without regard to benefits received, but according to a definite or fixed rule of frontage should be sustained as valid?

Assessments for paving are justifiable only on the basis of special and positive benefits. City of Fort Myers v. State, 95 Fla. 704, 117 So. 97, 99; Summerland Inc. v. City of Punta Gorda, 101 Fla. 550, 134 So. 614. Where the special benefits are substantially equal to the special assessment, the legislative authority may impose the entire reasonable and proper cost of the improvement upon such property even though an incidental benefit may also result to the public. But if the incidental benefit results to the property improved and the primary benefit to the public, to require abutting property to bear the entire expense would amount to an unwarranted servitude which cannot be imposed. Utley v. City of St. Petersburg, 107 Fla. 6, 144 So. 53 and cases there cited.

In this case the Chancellor made no determination as to the benefits actually received by the abutting property and the benefits received by the public from this street improvement, and whether the owners of the abutting property should pay the entire cost as evidenced by the paving certificate, or should only pay a part and the county pay the remainder, and if so, what part should be paid by each. There was considerable testimony on this subject and there should have been a determination of these questions in the final decree. However, complainants, because of conduct attributable to them, were precluded from calling attention to this omission from the final decree.

It is contended that, because of their conduct, complainants are estopped to assert that their constitutional rights are being invaded. The record shows that Edna H. Holliday owned this lot when the petition was presented to her and she, on October 16, 1925, signed it. She never made any objection in any way to the improvement or the assessment, and was certainly estopped to later complain about the assessment. She then, on November 25, 1925, conveyed

the lot to L. H. Hook, who was satisfied with the improvement, saw the work going on and never raised any objection to it. Hook was certainly estopped to complain at a later date about the assessment. Hook, on November 19, 1926, mortgaged the lot to A. M. Ross. The lot was foreclosed for a paving lien on a side street, and Hook repurchased it from John R. Walsh & Company, the purchaser at the foreclosure sale. Hook, by this circuitous route, did not unburden himself of the duty to pay for this improvement, or of the conduct that had estopped him from objecting to the assessment. The mortgage held by A. M. Ross was, on December 18, 1928, renewed, after Hook had reacquired title to the lot. The mortgage on the lot was foreclosed by Ross, and a Master's Deed issued to him on December 2, 1929. Thus Ross had no more right to complain of the assessment than Hook had and Hook was estopped by his conduct. On February 1, 1932, Ross conveyed the lot to L. T. Webb and Stella Webb, his wife, and placed $1700.00 in escrow to pay the paving lien if paving certificate No. 717 was not cancelled on or before three years after February 6, 1932. So the Webbs have no interest in this litigation except to see that the fund held in escrow is applied to payment of the paving certificate in case it is not cancelled of record. Ross having died, his successor in right is the real party in interest and is estopped to complain by reason of the conduct of A. M. Ross during his lifetime, and by the conduct of L. H. Hook, his mortgagor, from whom he derived title. Therefore complainants are, under these circumstances, estopped to assert that their constitutional rights have been invaded.

It is pointed out that a portion of Mississippi Avenue on one side of the railroad track was paved and the entire cost asesssed against the owners of the abutting property, and a portion of Mississippi Avenue on the other side of

the railroad track was paved and the entire cost paid by the county, when each paving project was begun on petition under Chapter 10145, Acts of 1925. This shows that the Board of County Commissioners acted contrary to the provisions of Chapter 10145 in allowing the county to pay the entire cost of the improvement because that Act contemplates that the owners of the abutting property shall be assessed with the cost of the improvement. However, the assessments against the abutting property on one side of the railroad track are not rendered void because the County Commissioners neglected their duty in failing to assess property on the other side of the railroad for those improvements.

Attorney's fees are recoverable only where they are provided for in advance in the contract or other evidence of agreement or are provided for by statute. U. S. Fidelity & Guaranty Co. v. Highway Engineering & Construction Co., 51 Fed. (2d) 894. Attorney's fees are not provided for in this case in any contract or evidence of agreement contained in the record. Provision for recovery of attorney's fees, was made in Section 6 of Chapter 10145, Acts of 1925, but no reference to that provision was made in the title of the Act, and that Section is unenforceable, regardless of whether the remainder of the Act is valid or not. Prairie Pebble Phosphate Co. v. Silverman, 80 Fla. 541, 86 So. 508. Therefore attorney's fees are not recoverable in this case. The validating Act, Chapter 12208, Acts of 1927, contains no reference to attorney's fees.

Chapter 10145 provides that when owners of two-thirds of abutting property on a continuous portion of public road shall present a petition to the Board of County Commissioners *duly signed by them,* the Board of County Commissioners shall grant the petition. This means that the owners of two-thirds of the property must sign the petition

before the Board of County Commissioners can act upon it. All of the owners of each piece of property must sign it. If the property accredited to E. R. Bohannon on the petition was in fact owned jointly by E. R. Bohannon and Parrie D. Bohannon, then both must sign the petition. The same rule holds true with respect to the property owned by J. S. Jones and Alice F. Jones. See 1 Elliott on Roads & Streets (4th Ed.) Sec 608. In this respect the petition was defective because it shows on its face that only the names of E. R. Bohannon and J. S. Jones were affixed thereto. The excuses given in the testimony for failure to sign the petition will not take the place of the omitted signatures.

In the absence of a showing of fraud, complainants cannot have Mr. Harry K. Cain, whose signature appears on the petition, deny, either by deposition or otherwise, that he placed his signature thereon for the purpose intended by the petition.

The name of the Tampa Casket Company also appears on the petition. It was placed there by Mr. M. M. Coarsey, the manager of the company. He had authority, given by the Board of Directors, to do anything necessary to the conduct of the company's business. Improving the street in front of the company's place of business was not necessary to the conduct of the company's business. No express authority was given J. M. Coarsey by the Board of Directors to sign the name of the company to the petition. However, at a subsequent meeting of the Board of Directors, the act of their manager in signing the petition was ratified. At the time of ratifying this act the company had not paid its taxes under Section 5977 (5) C. G. L.; but the ratification is valid and binding so far as the parties to this case are concerned, no proper party on behalf of the State being interested one way or the other in this litigation

Thus the name of the Tampa Casket Company was *duly* affixed to the petition.

Sufficient names were duly signed to the petition to give the Board of County Commissioners jurisdiction and authority to consider the petition, when the names of Harry K. Cain and the Tampa Casket Company are counted as duly affixed thereto and the names of the Bohannons and the Joneses are counted as not duly affixed thereto.

Because of the fact that estoppel precludes complainants from questioning the validity of the assessment or asserting that it violated constitutional principles, the error herein pointed out is rendered harmless, and we think that the decree appealed from should be affirmed.

Affirmed.

WHITFIELD, C. J., and ELLIS, TERRELL, BUFORD and DAVIS, J. J., concur.

BROWN, J., dissents in part.

BROWN, J. (dissenting in part).—This court held Chapter 10145 unconstitutional, but on rehearing the court was equally divided as to the constitutionality of the validating Act, Chapter 12,208. The writer thought both Acts were unconstitutional and absolutely void, for the reasons set forth in his opinion in Smith Bros. v. Williams, 100 Fla. 642, 651, 126 So. 367. The validating Act was void because the Legislature could not have imposed such arbitrary assessments by direct legislative act in the first instance for the reasons set forth in Parrish v. Hillsborough County, 98 Fla. 430, 123 So. 830, and Utley v. St. Petersburg, 107 Fla. 6, 144 So. 53. For the courts to so enforce the Act as to diminish the legislative assessments so as to correspond with the benefits to the property arising from the improvements would be to go contrary to the express legislative intent. It seems to me that even a direct legislative assessment on abutting rural property, for the total

cost of public highway improvements, based on the front-foot rule, is so essentially unjust and unconstitutional, as to be beyond the power of the Legislature to accomplish, either directly or indirectly.

### On Rehearing

PER CURIAM.—A petition for rehearing has been filed herein.

By oversight the decree was affirmed without excluding the amount awarded as attorney fees held to be erroneous. This will be remedied at the final disposition of the cause.

The paragraph of the opinion relating to a determination of benefits is unnecessary in view of the ultimate decision in the cause, and such paragraph may be eliminated.

An order will be entered allowing a reargument of the other points presented by the petition for rehearing.

It is so ordered.

WHITFIELD, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.

### On Further Rehearing

PER CURIAM.—Upon consideration of the petition for rehearing herein, it appears that the following paragraph in the opinion of the court is not appropriate to the decision of this cause, and it is eliminated, viz.:

"In this case the Chancellor made no determination as to the benefits actually received by the abutting property and the benefits received by the public from this street improvement, and whether the owners of the abutting property should pay the entire cost as evidenced by the paving certificate, or should only pay a part, and the county pay the remainder, and if so, what part should be paid by each. There was considerable testimony on this subject and there should have been a determination of these questions in the

final decree. However, complainants, because of conduct attributable to them, were precluded from calling attention to this omission from the final decree."

In the opinion it is held that attorney's fees should not be allowed, and the affirmance of the decree appealed from was thereby modified by the opinion of the court. The other points are sufficiently discussed in the main opinion.

The decree is reaffirmed with an express qualification that the allowance of attorney fees is to be eliminated from the decree that is hereby reaffirmed.

ELLIS, C. J., and WHITFIELD, TERRELL, BUFORD and CHAPMAN, J. J., concur.

BROWN, J., not participating.