CAMPBELL, Judge.
The question before us is whether a grantee who knows that a deed is defectively witnessed and acknowledged may rely upon that deed to his detriment and estop the grantor from denying the validity of the deed. We find that he may not.
In August 1984, Jonathan Schueler and Louis Thalhoffer, who is not a party to this suit, orally agreed to buy a small apartment building in Pinellas County at a foreclosure sale. They successfully bid $21,400 for the properly, but were short on cash and had to bring in a third investor, James Hearn. The men contributed as follows: Schueler, $4,400; Thalhoffer, $2,600; Hearn, $14,400.
Despite the unequal contributions, each considered himself a one-third owner. The deed showed Hearn as a one-third owner and Schueler as two-thirds owner. Two explanations were offered: (1) Thalhoffer had a judgment against him which could have attached to the property; and (2) by listing Schueler as a two-thirds owner, Schueler would be liable for and would pay Thalhoffer’s share of the property taxes, thus reducing unrelated debts he owed Thalhoffer.
To redress the imbalance in the contributions, Schueler and Thalhoffer were to pay Hearn $7,000 very quickly. Schueler was not able to come up with the money, but Thalhoffer induced his live-in girlfriend, ap-pellee Penelope Salsbury, to loan them $5,000 that her grandmother, appellee Garnet Franke, had given her as a gift in July 1984. Salsbury wrote a check to Thalhof-fer for $5,000 and Thalhoffer paid the money directly to Hearn.
Schueler and Thalhoffer then executed a thirty-day promissory note drafted by Sals-bury for $5,060 in favor of Garnet Franke. Salsbury testified that she drafted the note in favor of her grandmother so that her grandmother would have more money to invest in the property and because she did not want to be associated with Schueler.
When the note became due at the end of September 1984, Schueler testified that although he had the money, Franke refused it and insisted that Schueler sign over his share of the house to her.
Salsbury had prepared two quitclaim deeds in Thalhoffer’s presence. One deed showed Schueler as grantor of a one-third interest to Salsbury as grantee. The other showed Schueler as grantor of a one-third interest to Franke as grantee. The deed to Franke was intended to foreclose Schueler’s interest. The deed to Salsbury was intended to convey Thalhoffer’s one-third interest, held by Schueler, to Salsbury.
Thalhoffer, acting as agent for both ap-pellees, received the deeds from Salsbury and at Salsbury’s direction, took them to Schueler’s home to be signed on October 4. Franke and Salsbury both acknowledged that Thalhoffer was acting as agent for both of them. Schueler signed the deeds in Thalhoffer’s presence. Appellant’s wife was in the home but did not witness execution of the deeds. No one signed as subscribing witness.
Schueler testified that Thalhoffer was very insistent that Schueler sign over his interest and that Schueler was flustered and upset with Thalhoffer, but finally relented and signed the deeds to get rid of *906 Thalhoffer and to shut him up. Schueler testified that at the time he signed the deeds, he told Thalhoffer that they were not good. Thalhoffer denied that the discussion was heated or that Schueler denied the validity of the deeds.
Thalhoffer gave the deeds back to Sals-bury, who found a notary willing to acknowledge Schueler’s signature without contacting him.
Franke subsequently invested more money in the house in the belief that she owned it. Schueler testified that the next morning he called a notary he anticipated Thal-hoffer would attempt to use to warn the notary about the deeds. He testified that he also called Thalhoffer that day and told him not to attempt to do anything with the deeds. When Schueler learned from Thal-hoffer that the deeds were already recorded, he panicked and drew a quitclaim deed attempting to convey one-third interest to his wife in order to protect his interest. After filing the deed, he contacted his lawyer, and on October 11, 1984, he filed suit seeking declaratory judgment, cancellation of the deeds to Franke and Salsbury and an accounting of the assets.
The trial court found that the promissory note was valid in favor of Franke against both Schueler and Thalhoffer and that the deed from Schueler satisfied that obligation. The court further found that Schueler told Thalhoffer that he did not consider the deeds to be valid and that Thalhoffer knew at the time of conveyance that the. deeds were not valid. Nevertheless, the trial court applied estoppel and considered the conveyance effective based on Cox v. La Pota, 76 So.2d 662 (Fla.1954). The court also found that the subsequent quitclaim deed from Schueler to his wife was invalid since Schueler had already conveyed his entire interest in the property.
Schueler argues that the purported conveyances from him to Franke and Salsbury were invalid because they failed to conform to the witness requirements of section 689.-01, Florida Statutes (1985), and because the doctrine of estoppel under Cox should not be used to circumvent those requirements.
Section 689.01 requires that all deeds be signed in the presence of two subscribing witnesses. However, where the appellant/grantor and two witnesses sign the deed and the appellant/grantor knows that the witnesses did not actually witness his signature, the grantor may not use that deficiency to avoid the deed. Cox.
In Cox, the grantor knew that the deed was invalid, but the grantees did not since the deed appeared regular and valid on its face. The Cox court reasoned that the appellant/grantors were estopped to raise the deficiency since the appellant/grantors had caused the deficiency and had attempted to lull the grantees and caused them to change their position.
None of these circumstances is present here. The deeds were not regular and valid on their face. To the contrary, they not only appeared irregular, but the court found that Thalhoffer knew the deeds were not valid. The deeds were not witnessed or properly notarized. Noticing that the deeds were not properly notarized, grantees themselves created an irregularity by having the deeds fraudulently notarized. Far from having no notice of any irregularity, these appellees attempted to conceal an irregularity. As agent for appellees, Thalhoffer’s knowledge is imputed to appellees. Lerer v. Arvida Realty Co., 134 So.2d 798 (Fla. 2d DCA 1961).
A claim of estoppel must be rejected where the party asserting the estoppel knows or should have known of the failure to have the instrument properly witnessed. Wickes Corp. v. Moxley, 342 So.2d 839 (Fla. 2d DCA 1977). Appellees knew by looking at the deed that it was not witnessed. The trial court expressly found that appellees knew the deed was defective. There is no basis to support a claim of estoppel per Cox.
Reversed and remanded for further proceedings not inconsistent with these proceedings.
SCHEB, A.C.J., and THREADGILL, J., concur.